**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL KNEE and ERIC M. MURPHY, on behalf of themselves and those similarly situated, ) ) ) ) ) | |
| *Plaintiffs*, ) ) | |
| v. ) ) | Case No. 13-CV-6337 (JGK) |
| J.P. MORGAN RETIREMENT PLAN SERVICES, LLC; J.P. MORGAN CHASE BANK, N.A.; JPMAC HOLDINGS INC.; J.P. MORGAN CHASE & CO.; AND J.P. MORGAN INVESTMENT MANAGEMENT INC., d/b/a J.P. MORGAN ASSET MANAGEMENT, ) ) ) ) ) ) ) ) | **ANSWER TO COMPLAINT** |
| *Defendants*. ) ) | |

JPMorgan Chase & Co. ("JPMC"), JPMorgan Chase Bank, N.A. ("JPMC Bank"),

JPMAC Holdings Inc. ("JPMAC"), J.P. Morgan Investment Management Inc. ("JPMIM"), and

JPMorgan Retirement Plan Services LLC ("JPMRPS") (collectively the "Defendants") hereby

answer Plaintiffs' Complaint and assert their affirmative defenses.

## INTRODUCTION

1.    This ERISA case concerns some fairly complex retirement plan investment fund structures. Ultimately, though, this case boils down to a simple scheme of self-dealing by one of the world's most powerful investment banks, JP Morgan Chase & Co., and various of its affiliates who are the Defendants here. As explained below, Defendants abused their fiduciary responsibilities to acquire control from another company of a "stable" retirement fund by first driving it into the ground and then acquiring its asset management and participants at no cost. In a 72-page Arbitration Award against JPM (appended and made a part of this Complaint as Attachment "A") and in favor of that company, American Century Corporation, the arbitrators found that JPM had committed the wrongful conduct alleged and awarded American Century in excess of $132 million in damages.  (*See* http://www.bizjournals .com/kansascity/news/2012/ 03/22/american-century-wins-373m-judgment.html?page=all (last visited Sept. 8, 2013)). Plaintiffs and the plaintiff class were participants through their several 401(k) plans in

American Century's Stable Asset Fund at issue in the arbitration, and, as was American Century, were harmed by JPM's wrongful conduct.

**ANSWER**:   Defendants admit that JPMC and some of its subsidiaries have been named as defendants in this ERISA action.  The allegations of the fourth sentence of paragraph 1 purport to characterize selected terms of the written Arbitration Award which speaks for itself, and thus are denied.  Defendants deny the remaining allegations of paragraph 1.

## JURISDICTION AND VENUE

2.     The Court has subject matter jurisdiction over this matter pursuant to ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1331.

**ANSWER**:   The allegations in paragraph 2 state a legal conclusion requiring no response.  To the extent a response is required, Defendants admit that this Court has subject matter jurisdiction over this matter pursuant to ERISA section 502(e)(2) and 28 U.S.C. § 1331.  Defendants further state, on information and belief, that this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

3.     Venue is proper in this District because Defendants reside in this District, Defendants conduct business in this District, and the harm complained of herein emanated from this District.

**ANSWER**:   The allegations in paragraph 3 state a legal conclusion requiring no response.  To the extent a response is required, and assuming the truth of Plaintiffs' allegations for these purposes only, Defendants admit venue is proper in this District.

## PARTIES

4.     Plaintiff Michael Knee has been and is a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Modern Drop Forge Company Employees' Retirement Benefit Plan (the "Modern Drop Forge Plan"). The Modern Drop Forge Plan is a defined contribution retirement plan that is subject to ERISA. At all relevant times, Mr. Knee has had 401(k) funds allocated to the American Century Stable Asset Fund ("ACSAF") at the time of the JPM acquisition on September 14, 2007 and continuing thereafter in what became its successor fund, the Commingled Pension Trust Fund of J.P. Morgan Chase Bank, N.A. (hereafter "Commingled Stable Value Fund").

**ANSWER:**    Defendants admit that Mr. Knee is a participant in the Modern Drop Forge Plan,

that part of the assets in his Plan account were invested in the American Century Stable Asset

Fund ("ACSAF") before September 14, 2007, and that part of the assets in his Plan account were

invested in the "Commingled Stable Value Fund" (the "CSVF") from September 14, 2007 to the

present.  Defendants admit, on information and belief, that the Modern Drop Forge Plan is a

defined contribution retirement plan that is subject to ERISA.

     5.    Plaintiff Eric M. Murphy has been and is a participant, as defined in ERISA §
3(7), 29 U.S.C. § 1002(7), in the Mayer Electric Supply Co., Inc. Capital Accumulation Plan (the
"Mayer Electric Plan"). The Mayer Electric Plan is a defined contribution retirement plan that is
subject to ERISA. Mr. Murphy has had 401(k) funds allocated to ACSAF at the time of the JPM
acquisition on September 14, 2007 and continuing thereafter in the Commingled Stable Value
Fund.

**ANSWER:**    Defendants admit that Mr. Murphy is a participant in the Mayer Electric Plan, that

part of the assets in his Plan account were invested in the ACSAF before September 14, 2007,

and that part of the assets in his Plan account were invested in the CSVF from September 14,

2007 to May 29, 2012.  Defendants admit, on information and belief, that the Mayer Electric

Plan is a defined contribution retirement plan that is subject to ERISA.

     6.    Plaintiffs Knee and Murphy sue on their own behalf and, as specified below, on
behalf of participants in 401(k) plans who have had funds allocated to ACSAF at the time of the
JPM acquisition on September 14, 2007 and continuing thereafter in the Commingled Stable
Value Fund.

**ANSWER:**    Defendants admit that Plaintiffs purport to sue on behalf of a putative class but

deny that class certification is appropriate.  Defendants deny any remaining allegations in

paragraph 6.

     7.    Defendant J.P. Morgan Retirement Plan Services LLC ("JPMRPS") is a wholly-
owned subsidiary of defendant J.P. Morgan Chase & Co. ("JPMC").

**ANSWER:**    Defendants admit that JPMRPS is an indirect, wholly-owned subsidiary of JPMC.

8.     At all relevant times, JPMC or one of its affiliates has held a significant minority interest in American Century Companies, Inc. ("ACC"), the parent company of American Century Investments ("ACI").

**ANSWER:**    Defendants admit that, from January 15, 1998 until August 31, 2011, JPMAC held a minority interest in American Century Companies, Inc. ("ACC"), which owned American Century Investment Management ("ACI").

9.     Before JPMC acquired its interest in ACC, ACC had developed a wholly-owned retirement plan recordkeeping service business known as Retirement Plan Services, Inc. ("RPS"). Its subsidiary ACI employed RPS to assist plan sponsors in determining the plan's investment alternatives as well as providing management services needed by employer retirement plan sponsors for their 401(k) retirement plans under ERISA.

**ANSWER:**    Defendants admit that, before JPMAC acquired an interest in ACC, ACC had developed a wholly-owned retirement plan recordkeeping business known as Retirement Plan Services ("RPS").  Defendants also admit on information and belief that RPS at times identified investment options to plan sponsors and/or their third-party consultants for consideration and provided administrative services to plan sponsors.  Defendants deny the remaining allegations of paragraph 9.

10.     By 1998, JPMC or an affiliated entity had acquired a 50% economic interest in RPS from ACC (hereafter collectively "JPM"). Thereafter, JPM shared the cost of operating RPS with ACI/ACC.

**ANSWER:**    Defendants deny the allegations of the first sentence of paragraph 10.  Defendants admit that, from 1998 to 2003, JPMC or an affiliated entity shared the costs of operating RPS with ACC or ACI.

11.     Pursuant to an agreement dated June 1, 2003 between ACI and JPM (the "Revenue Sharing Agreement"), JPM acquired ACC's interest in RPS. (RPS is referred to as "JPMRPS" with regard to the period after JPM's acquisition of 100% of RPS.) Under the Revenue Sharing Agreement and thereafter, JPMRPS continued to provide services to both JPM and ACI retirement investment product funds and the 401(k) plan sponsors and participants who invested in those funds. As detailed below, JPMRPS was at all relevant times an ERISA fiduciary to the 401(k) plan sponsors and plaintiff participants invested in ACSAF and its successor, the Commingled Stable Value Fund. JPM by virtue of its ownership and control of

4

every aspect of JPMRPS was and is also a fiduciary to Plaintiffs under ERISA at least from the date of the Revenue Sharing Agreement.

**ANSWER**:    Defendants admit that, pursuant to an agreement dated May 16, 2003, J.P.

Morgan Invest Inc. acquired all of the common stock of American Century Retirement Plan

Services, Inc.  Defendants further admit that, after the acquisition, JPMRPS continued to provide

services to 401(k) plan sponsors who contracted with JPMRPS.  Because they are vague,

Defendants lack information sufficient to form a belief as to the truth of the remaining

allegations of the second sentence of paragraph 11.  Defendants deny the remaining allegations

of paragraph 11.

12.    Defendant JPMC is a financial services provider headquartered in New York, New York. Through defendant JPMAC Holdings Inc. ("JPMAC"), JPMC owned at all relevant times between 40% and 48% interest in ACC. Throughout the period of its ownership, JPMC and/or JPMAC had the right to appoint and did appoint at least one board member to the ACC Board of Directors, who thus served as a fiduciary of ACC. In addition, by virtue of their ownership and control of JPRMS [sic], JPMC and/or JPMAC, or both, have been ERISA fiduciaries with regard to those 401(k) plans and plan participants.

**ANSWER**:    Defendants admit the allegations in the first sentence of paragraph 12.

Defendants also admit that JPMAC owned a minority interest in ACC, and that JPMAC had the

right to and did appoint a Board Member to the ACC Board of Directors, who owed certain

obligations under governing corporate law to ACC.  Defendants deny the remaining allegations

of paragraph 12.

13.    Defendant J.P. Morgan Chase Bank, N.A. ("JPMCB, NA") is a bank operating in the United States and abroad with a registered address of 270 Park Avenue, New York, New York 10017-2014. It is a wholly-owned subsidiary of JPMC. JPMCB, NA, acts as trustee and fiduciary (either directly or through one or more wholly-owned subsidiaries) of JPM's various stable value fund products, including JPM's Commingled Stable Value Fund and its Stable Asset Income Fund ("SAIF"), which are collective trust funds established and maintained by JPMCB, NA, under declarations of trust. JPMCB, NA, has also been an ERISA fiduciary with respect to 401(k) plan employer-sponsors and plan participants in the Commingled Stable Value Fund from its inception in 2007.

**ANSWER:**     Defendants admit that JPMC Bank is a bank operating in the United States with its principal place of business located in New York, that it is a wholly-owned direct subsidiary of JPMC, and that it acts as trustee and fiduciary to the collective trusts it establishes and maintains, including the Stable Asset Income Fund ("SAIF") and the CSVF.  Defendants deny the remaining allegations of paragraph 13.

14.     Defendant J.P. Morgan Investment Management, Inc., a.k.a. J.P. Morgan Asset Management ("JPMAM") is a Delaware corporation with its principal place of business at 270 Park Avenue, New York, New York 10017, and is a wholly owned subsidiary of JPMC. JPMAM is the marketing name for the asset management business of JPM and its subsidiaries worldwide. It manages the Commingled Stable Value and other JPM stable value fund products. As well as being a fiduciary with respect to JPMRPS, JPMAM has been an ERISA fiduciary with respect to the 401(k) plans and their participants who invested in the Commingled Stable Value Fund from its inception.

**ANSWER:**     Defendants admit that JPMIM is a Delaware corporation with its principal place of business at 270 Park Ave., New York, New York 10017, and is a wholly owned indirect subsidiary of JPMC.  Defendants deny that JPMIM is also known as JPMAM.  Defendants admit that J.P. Morgan Asset Management is the marketing name for certain of JPMC's asset management businesses.  Defendants deny the remaining allegations in paragraph 14.

15.     Collectively, the JPM defendants are referred to as "JPM." The JPM entities named as defendants are controlled and directed through common and interlocking directors or officers.

**ANSWER:**     Defendants admit that Plaintiffs refer to Defendants collectively as "JPM" in the Complaint.  Defendants deny the remaining allegations of paragraph 15.

## FACTUAL BACKGROUND

16.     Plaintiffs and the proposed plaintiff class are persons who invested part or all of their 401(k) funds in the American Century Stable Asset Fund ("ACSAF") and at the time of JPM's acquisition on September 14, 2007. At that time, JPM caused the ACSAF to be merged into the Commingled Pension Trust Fund (Stable Value) of JPMorgan Chase Bank, N.A ("Commingled Stable Value Fund") or otherwise to cease to exist, with all its assets and participants/investors at that time being transferred to the Commingled Stable Value Fund. By virtue of JPM's acquisition of the ACSAF, Plaintiffs and the proposed plaintiff class became involuntary investors in its successor fund, the Commingled Stable Value Fund.

**ANSWER:**    Defendants admit that Plaintiffs purport to represent a class of individuals who

invested in ACSAF and then the CSVF.  Defendants deny the remaining allegations of paragraph

16.

17.    A "stable value fund" is a common investment option offered to 401(k) plan
participants. It is offered often as an alternative to a money market fund investment option, as it
ostensibly provides security of principal, liquidity and a small potential added return above what
money market funds offer. Often the stable value fund serves as the default investment option in
401(k) plans, such that, if an employee does not affirmatively designate an investment option,
the employee's 401(k) funds will automatically be placed in the stable value fund option.

**ANSWER:**    Defendants admit that stable value products are common investment options in

401(k) plans, that plan sponsors may choose to offer them as investment options to plan

participants instead of money market funds and that plan sponsors may choose to make stable

value products a default investment option.  Defendants also admit that stable value products are

designed to guarantee participants, among other things, principal plus accumulated interest.  By

way of further answer, investors in CSVF maintained their principal and accumulated interest,

received positive crediting rates and received returns above those offered by money market

funds.  Defendants deny the remaining allegations of paragraph 17.

18.    Since at least the late 1990s, JPM and ACI (and related entities of JPM and ACI)
had been business partners that together promoted retirement plan investment funds. In addition
to co-owning RPS, they both operated stable value funds and recognized at the outset of their
business together that their stable value funds should not compete against each other for the same
investment dollars.

**ANSWER:**    Defendants admit that, from January 15, 1998 until August 31, 2011, JPMAC

owned a minority interest in ACC, and that both ACC and JPMC Bank and/or its affiliates

operated stable value products.  Defendants deny the remaining allegations of paragraph 18.

19.    Stable value funds must trade at the value at which the fund is carried on the
bank's balance sheet ("book value"), and a competition for yield in a down market can leave a
stable value fund in a liquidity crunch, with the fund required to sell depressed assets to meet
redemption demands by participating retirement plans and/or their individual plan participants,
which must be paid at book value.

**ANSWER:**   Defendants admit that redemptions by plan participants from a stable value product are guaranteed at book rather than market value and, as a result, a stable value product may be required to sell assets with a depressed value to meet individual plan participants' redemption demands that must be paid at book value.  Defendants deny the remaining allegations of paragraph 19.

20.   Sometime in the 1990s, ACC created a wholly-owned subsidiary of ACI known as Retirement Plan Services, Inc. ("RPS"). RPS provided various services to sponsors of 401(k) plans ("the employers") and their plan participants. In this capacity, on behalf of and for 401(k) plan sponsors, RPS reviewed retirement plan investment funds available in the marketplace and proposed to these retirement plan sponsors a suggested lineup of investment options from which their employees-plan participants could choose in investing their 401(k) monies. RPS also provided substantial administrative services to ACSAF. (These investment, management and administrative services are detailed in the Arbitration Award, attached and made a part of this Complaint as Attachment A). ACSAF was among the funds that RPS proposed to plans, including the Modern Drop Forge and Mayer Electric 401(k) plans in which Plaintiffs were participants and which thereafter offered ACSAF as an investment alternative.

**ANSWER:**   Defendants admit that ACC created RPS.  Defendants admit on information and belief, that RPS provided various services to 401(k) plan sponsors and that RPS may have identified investment options to plan sponsors and/or their third-party investment consultants' for their consideration to choose to offer to plan participants.  Defendants also admit on information and belief that ACSAF may have been one of the funds that RPS at times identified to plan sponsors and/or their third-party consultants for consideration, and that the Modern Drop Forge and Mayer Electric Plans offered ACSAF as investment alternatives.  Defendants deny the remaining allegations of paragraph 20.

21.   ACI used RPS as a significant distribution channel to sell its own investment funds in the retirement investment market. These ACI funds were in essence "house brands," known as "proprietary funds," and they were given preferential placement by RPS in the investment lineups that RPS proposed to 401(k) sponsors.

**ANSWER**:   Defendants admit the first sentence of paragraph 21 on information and belief.

Because they are vague, Defendants lack information sufficient to form a belief as to the truth of

the remaining allegations of paragraph 21.

22.     Beginning on January 15, 1998, and continuing thereafter, JPM acquired and owned a substantial but not majority interest in ACC. On several occasions, it sought to buy a majority interest in ACC, but was rebuffed by ACI on the basis of price. In 1998, JPM acquired a 50% interest in RPS from ACC/ACI and agreed to bear one-half of the costs of operating RPS. In return, JPM obtained the opportunity to have its proprietary JPM funds marketed through RPS and given the same preferential placement as ACI funds in investment lineups proposed to plan sponsors by RPS.

**ANSWER**:   Defendants admit that, from January 15, 1998 until August 31, 2011, JPMAC

held a minority interest in ACC, that JPMC or an affiliate agreed to bear one-half of the costs of

operating RPS.  Defendants admit on information and belief that RPS made available as

investment options for plan sponsors to choose investment products sponsored by third-parties,

JPMC or an affiliated entity and/or ACC or an affiliated entity.  Defendants deny the remaining

allegations of paragraph 22.

23.     As part of this 1998 agreement, JPM and ACI agreed that there would only be one stable value fund product offered by RPS to a plan sponsor. Per agreement, the stable value fund product to be offered would be determined by the size of the plan. Thus, they agreed that RPS would offer JPM's stable value funds only to larger employer plans holding $50 million or more in assets, and RPS would offer ACI's stable value funds only to plans holding less than $50 million in assets.

**ANSWER**:   Defendants deny the allegations of paragraph 23.

24.     The larger plans' stable value fund investments were held in JPMAM "separate accounts," managed by JPM and invested in JPM stable value funds on a plan sponsor-specific basis. The investment agreements between JPM and the retirement plan sponsors involved here and the investments of such funds were substantially identical. The smaller accounts were invested in ACSAF. JPM and ACI received the revenue and profits from the funds they respectively managed. Both the JPM separate account and the ACSAF were treated by RPS as proprietary in that RPS would not and did not offer any third-party stable value funds to retirement plan sponsors as part of suggested 401(k) plan investment option lineups. That is, JPM and ACI agreed to split and allocate the sole stable value fund slot in the RPS retirement plan fund lineup on the above-described basis.

**ANSWER:**    Defendants admit that RPS may have identified both JPMIM separate accounts and ACSAF to plan sponsors and/or their third-party consultants for their consideration to offer as investment options to plan participants.  Defendants deny the remaining allegations of paragraph 24.

25.    In 2003, JPM and ACC entered into the Revenue Sharing Agreement. In this agreement, JPM acquired the remaining 50% of RPS from ACI. (RPS thereafter is referred to herein as "JPMRPS.") JPM agreed in the Revenue Sharing Agreement that it would maintain the status quo as to existing ACI stable value fund sponsors and not attempt to lure them away from ACSAF into any JPM stable value fund. In furtherance of this obligation, JPM was obliged both directly and through RPS to (a) offer the same preferential treatment to ACI investment products (including ACSAF) as RPS had previously offered, (b) provide the same level of marketing and sales support to ACI investment products as were offered to JPM products, and (c) establish a compensation structure substantially the same for both ACI and JPM stable value products. In return, JPM was permitted to offer its own JPM stable value funds to plans with less than $50 million in assets that were not already invested in ACSAF. In addition, JPM agreed to pay ACI a multi-year commission on sales of ACI products sold through RPS.

**ANSWER:**    Defendants admit that, in June 2003, J.P. Morgan Invest Inc. entered into an agreement with ACI (the "Revenue Agreement"), and that it entered into a Stock Purchase Agreement with American Century Services Corporation to purchase the common stock of American Century Retirement Plan Services, Inc.  Defendants deny the remaining allegations of the first sentence of paragraph 25.  The allegations of the remaining sentences of paragraph 25 purport to characterize selections from written documents which speak for themselves, and thus are denied.

26.    Before and after execution of the Revenue Sharing Agreement, JPM attempted to purchase ACSAF from ACI. These efforts were rebuffed. JPM then embarked on a plan to use JPMRPS (now a wholly owned JPM subsidiary) to enfeeble the ACSAF to the extent that not only would ACSAF not be able to compete with the JPM stable value funds, but it would not be able to survive at all as an independent, non-JPM entity.

**ANSWER:**    Defendants deny the allegations of paragraph 26.

27.    In support of this plan, and despite its contractual commitment to manage ACSAF in such a manner as not to impair ACI's future revenues, JPMRPS embarked on a course of conduct in which it wrongfully lured and enticed ACSAF plan sponsors away from the ACSAF and into JPM's Commingled Stable Value Asset Income Fund as well as into JPM's separate

Stable Value Funds. Throughout this course of conduct, JPM and JPMRPS knew full well that such conduct would damage ACSAF and investors in it like Plaintiffs.

**ANSWER:**     Defendants deny the allegations of paragraph 27.

28.     Thus, JPMRPS, through its actions, was able to influence, manage and control fund selection for 401(k) plans and participants invested in ACSAF and move many plan sponsors to JPM's Stable Value Funds. Ultimately, ACSAF was so totally decimated by JPM's conduct that it was no longer economically viable for ACSAF to exist at all, and JPM caused what remained of that fund to be merged or otherwise become part of the Commingled Stable Value Fund on September 14, 2007.

**ANSWER:**     Defendants deny the allegations of paragraph 28.

29.     RPS, both before and after JPM's acquisition of 100% ownership, and JPM by virtue of its ownership and control of JPMRPS, were and are fiduciaries to Plaintiffs and the proposed plaintiff class and the plans in which they participated in that, among other things, they provided investment management services and discretionary administrative authority and responsibilities with regard to management of ACSAF, both up to and after it became part of the Commingled Stable Value Fund. Moreover, one or more of the JPM entities were and are fiduciaries as trustees and custodians with respect to the Commingled Stable Value Fund and other JPM stable value funds pursuant to ERISA § 403(a), 29 U.S.C. § 1103(a), and are also fiduciaries as investment managers with respect to these funds in that they provided investment, trust and administrative services to these funds. The actions of JPMRPS and the related JPM entities constitute a breach of fiduciary duty to Plaintiffs and the proposed class in violation of ERISA sections 404 and 409, 29 U.S.C. §§ 1104 and 1109, and directly and proximately caused economic losses to Plaintiffs and the proposed class.

**ANSWER:**     Defendants admit that JPMC Bank is the trustee and an ERISA fiduciary for

certain delimited purposes for the CSVF and the commingled trust funds sponsored by JPMC

Bank.  Defendants deny the remaining allegations of paragraph 29.

30.     As noted above, throughout this period JPM desired to acquire the shares of ACI, but it and ACC could not agree on price. Because the price of ACI was driven to a large extent by the amount of assets ACI had under management and the performance of the fund at issue here, JPM knew that the amount it would need to pay for the ACI funds decreased as the assets under ACI management decreased. In addition, to the extent JPM was able to use RPS and JPMAM to induce plan sponsors to leave ACSAF in favor of JPM Stable Value Funds, JPM's assets under management and consequent fees would increase. Thus, JPM's conduct served both to decrease the purchase price of ACI's Stable Asset Fund and concurrently increase its own revenues. JPM's efforts on this score ultimately succeeded, as the assets under management in ACSAF and the number of 401(k) plans offering ACSAF as a 401(k) plan investment option substantially decreased after the date of the Revenue Sharing Agreement and JPM's acquisition of 100% of RPS.

**ANSWER:**      Defendants deny the allegations of paragraph 30.

31.      At the time of the Revenue Sharing Agreement in 2003, JPM did not have a pooled stable value fund with which to compete with ACSAF. In 2004, JPM, as part of its acquisition of Bank One, acquired Bank One's Stable Asset Income Fund ("SAIF"). This fund, which became JPM's Stable Asset Income Fund, was a pooled stable value fund which like ACSAF targeted 401(k) plans with less than $50 million in assets – in other words, the very same market on which ACSAF was focused. This acquisition allowed JPM to offer a product through JPMRPS that competed directly with ACSAF.

**ANSWER:**      Defendants admit that in 2003 at the time of the Revenue Agreement, Defendants

did not operate a pooled stable value product and that in 2004, as part of the acquisition of Bank

One, JPMC Bank acquired SAIF.  Defendants deny the remaining allegations of paragraph 31.

32.      Thereafter, JPM, through its wholly owned subsidiaries JPMRPS and JPMAM, embarked on a campaign to induce plan sponsors that had offered the ACSAF to switch to the competing JPM's Stable Asset Investment Fund and, if large enough, to its separate JPM Stable Value Funds. This strategic cannibalization of ACSAF enabled JPM to acquire ACSAF at the lowest possible price and to minimize the commissions due ACI incident to that acquisition under the Revenue Agreement and thereby increase JPM's revenues.

**ANSWER:**      Defendants deny the allegations of paragraph 32.

33.      With the acquisition of Bank One's SAIF, JPM actively pursued existing ACSAF sponsors to switch to its fund. Thus, in December 2004, JPMRPS' chief financial officer, Mary J. Block, stated that "JPM/ I want to replace all ACI with JPM Stable Value . . . ." As early as June 2004, JPMRPS employee Paul Shahrocki had written that the takeover of RPS and the availability of the Bank One SAIF would be the "end" of ACSAF.

**ANSWER:**      Defendants deny the allegations of the first sentence of paragraph 33.  The

allegations of the second and third sentences of paragraph 33 purport to quote or paraphrase

selections from documents that speak for themselves, and thus are denied.

34.      To further achieve this aim, JPM systematically used the newly acquired Stable Asset Income Fund ("SAIF") to steer current ACI plan sponsor clients away from ACSAF and into JPM's competing SAIF. Acknowledging this plan, the co-head of JPMRPS's Strategic Relationship wrote in late 2004 or early 2005 that "we are on officially the path to moving clients from ACI to JPM stable value, w/priority on larger accounts."

**ANSWER:**     Defendants deny the allegations of the first sentence of paragraph 34.  The

allegations of the second sentence of paragraph 34 purport to quote selections from a document

that speaks for itself, and thus are denied.

35.     Almost from the inception of the Revenue Sharing Agreement in September 2003, JPMRPS and JPM offered substantial rewards to JPMRPS employees for promoting JPM stable value funds to the detriment of ACSAF and participants who invested in it. For example, JPMRPS employees were informed that their compensation opportunities were greater for sales and promotion of JPM's stable value fund than ACSAF. Also, JPMRPS gave JPM's stable value funds the exclusive opportunity to compete with third-party funds, a role previously occupied solely by ACI's funds.

**ANSWER:**     Defendants deny the allegations of paragraph 35.

36.     Despite their understanding of the duties of a fiduciary under ERISA, the JPM entities induced, encouraged and caused JPMRPS to imprudently and in violation of their fiduciary duties of loyalty and candor engage in the above-described scheme. Thus, beginning in the fall of 2003 and continuing to the fall of 2007, JPM engaged in concert with fiduciary JPMRPS in intentional efforts to damage ACSAF as described above to benefit JPM, JPMAM's profits and JPM stable value products. JPM's personnel assisted and caused JPMRPS to act in derogation of their fiduciary obligations to American Century Stable Value participants including Plaintiffs and the plaintiff class by influencing ACSAF's plan sponsor and participant decisions on fund selection for JPM's own financial interest, rather than the best interest of ACSAF plan participants, in order to reap greater financial rewards for themselves.

**ANSWER:**     Defendants deny the allegations of paragraph 36.

37.     The JPM entities profited from their knowing participation in JPMRPS's fiduciary breaches, extracting the profits associated with being the provider of services under the plans and plan managers of the successor stable value fund and other stable value clients who were placed after being moved away from ACSAF.

**ANSWER:**     Defendants deny the allegations of paragraph 37.

38.     As a result of this campaign by JPM, the assets under management by ACI in its Stable Value Fund substantially decreased. Ultimately, ACI determined that it was no longer viable to maintain its Stable Value Fund as a separate entity and in September 2007 transferred the Fund's assets to the new JPM entity, the Commingled Stable Value Fund, which JPM has managed thereafter. ACSAF was so depleted by that point that ACI received no compensation from JPM from the transfer.

**ANSWER:**     Defendants admit that ACSAF's assets under management decreased.  Defendants

also admit that some of the sponsors of plans which formerly invested in ACSAF chose to

execute participation agreements with JPMC Bank to offer the CSVF in their plans, and that

these plans' stable value assets were then invested in the CSVF.  Defendants further admit that

ACI received no compensation for these investments.  Defendants lack information sufficient to

form a belief as to the truth of what "ACI determined" with respect to ACSAF's viability.

Defendants deny the remaining allegations of paragraph 38.

      39.     The mass exodus of plan participants, and plan assets from ACSAF, all of which was as required at book value, caused the market value of that fund to decrease so that as of September 14, 2007 it was further below book value than otherwise, to the loss and detriment of Plaintiffs and the proposed plaintiff class. Plaintiffs and the plaintiff class were further injured by the loss and detriment associated with the poor performance of JPM's Commingled Stable Value Fund thereafter. That is, if ACI's Stable Value Fund had remained in business, managed by ACI on the same principles as were in place prior to the transfer to JPM's fund, Plaintiffs allege on information and belief that they and the plaintiff class would have fared far better than they actually did after the involuntary transfer to JPM's Commingled Stable Value Fund.

**ANSWER:**    Defendants deny the allegations of paragraph 39.

      40.     In contrast, by virtue of its wrongful conduct, as confirmed by the Arbitration Award, Defendants obtained substantial profits and fees by their wrongdoing, which should be disgorged.

**ANSWER:**    Defendants deny the allegations of paragraph 40.

      41.     In July 2009, ACI initiated arbitration proceedings against JPMRPS and related entities. *Am. Century Inv. Mgmt., Inc. v. J.P. Morgan Invest Holdings LLC,* No. 58 148 Y 00220 9 (Am. Arb. Ass'n). In the arbitration complaint, ACI alleged that in violation of the Revenue Sharing Agreement and in bad faith, JPM embarked on a successful plan to (1) take over American Century's Stable Value accounts to decrease ACSAF's value for ultimate acquisition, (2) increase JPM assets under management and resulting fees to JPM entities, and (3) decrease the amounts due to ACI under the Revenue Agreement.

**ANSWER:**    Defendants admit that ACI initiated arbitration proceedings in 2009 and that this

proceeding was designated as *American Century Investment Management v. J.P. Morgan Invest*

*Holdings LLC*, No. 58 148 Y 00220 09.  The allegations of the second sentence of paragraph 41

purport to paraphrase selections from a written document that speaks for itself, and thus are

denied.

42.     In its 72-page Award dated August 10, 2011, the arbitrators sustained ACI's claim and awarded it $128,297,668 plus interest in the amount of $4,334,000, for a total award of $132,631,688, for JPM's breach of the Revenue Sharing Agreement. *See Arbitration Award,* Attachment A. The Award and the facts on which it is based remained under seal until March 2012.

**ANSWER:**     The allegations of the first sentence of paragraph 42 purport to characterize

selections from a written document that speaks for itself, and thus are denied.  Defendants admit

that the Arbitration Award was confidential and remained non-public until March 2012.

Defendants deny the remaining allegations of paragraph 42.

## ERISA REQUIREMENTS

43.     ERISA sections 404(a)(1)(A), (B), and (C) provide in relevant part that "a fiduciary shall discharge its duties with respect to a plan solely in the interests of the participants and beneficiaries" and must (A) act "for the exclusive purpose of providing benefits to participants and their beneficiaries"; (B) act with "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims"; and (3) "diversify[] the investments of the plan so as to minimize the risk of large losses unless under the circumstances it is clearly prudent not to do so."

**ANSWER:**     The allegations of paragraph 43 are legal conclusions to which no response is

necessary.  To the extent a response is required, the allegations of paragraph 43 purport to quote

or paraphrase selections from ERISA, which speaks for itself, and thus are denied.

44.     These fiduciary duties are the "highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.2 (2d Cir. 1982).

**ANSWER:**     The allegations of paragraph 44 are legal conclusions to which no response is

necessary.  To the extent a response is required, the allegations of paragraph 44 purport to quote

or paraphrase selections from a written document which speaks for itself, and thus are denied.

45.     Fiduciary duties under ERISA section 404 include, among others:

(A)     The duty to act exclusively in the best interest of the plans, their participants, and their beneficiaries. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

(B)     The duty to disclose and inform, which encompasses a negative duty not to misinform; an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and an affirmative duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

(C)     The duty to avoid conflicts of interest; and should such conflicts occur, the duty to resolve them promptly.

(D)     The duty to conduct an independent, thorough, and honest investigation into, and to continually monitor, the merits of all the investments of a plan.

(E)     The duty to diversify sufficiently the investment portfolio of the plan.

**ANSWER:**     The allegations of paragraph 45 are legal conclusions to which no response is

necessary.  To the extent a response is required, the allegations of paragraph 45 purport to quote

or paraphrase selections from ERISA, which speaks for itself, and thus are denied.

46.     ERISA sections 406(a) and (b), in relevant part, prohibit a fiduciary both directly and indirectly as a party in interest from participation in certain identified transactions with a plan for which it serves as a fiduciary. Thus, section 406(a) provides that a fiduciary shall not cause a plan to engage in a transaction if he knew or should have known that such transaction was directly or indirectly a sale or exchange between the plan and the fiduciary, or a transfer to or use by a fiduciary of any assets of the plan, or furnishing any goods or services to the plan. Similarly, section 406(b) prohibits a fiduciary from dealing with any assets of the plan in his own interest or account, or from acting for any person whose interests are adverse to the plan or receiving any consideration for his own account from any person dealing with the plan.

**ANSWER:**     The allegations of paragraph 45 are legal conclusions to which no response is

necessary.  To the extent a response is required, the allegations of paragraph 45 purport to

characterize selections from ERISA, which speaks for itself, and thus are denied.

## CLASS ALLEGATIONS

47.     ***Class Definition***. Plaintiffs bring this matter as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and, in the alternative, (b)(3). Plaintiffs file this case on behalf of the following proposed class:

All participants of ERISA plans, as well as beneficiaries of those plans, who were invested directly or indirectly in the American Century Stable Asset Fund immediately before and continuing after JPMAM took over the Fund and transferred its assets to JPM's Commingled Stable Value Fund on or about September 14, 2007. Excluded from the Class are the jurists to whom this case is

assigned, as well as their respective staffs; counsel who appear in this case, as well as their respective staffs, including experts they employ; the Defendants in this matter, as well as their officers and directors; any person, firm, trust, corporation, officer, director, or other individual or entity in which a Defendant has a controlling interest or that is related to or affiliated with any of the Defendants; and the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded party.

**ANSWER:**   Defendants admit that Plaintiffs purport to bring this case as a class action.

Defendants deny that certification is appropriate.

48.   *Numerosity.* The members of this Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time, and can be ascertained only through discovery, Plaintiffs reasonably believe that more than 80 ERISA plans throughout the country offered ACSAF and JPM's successor plan, Commingled Stable Value Fund, during the Class Period. These Plans collectively have many thousands of participants and beneficiaries, and Plaintiffs believe that a substantial number of these persons had invested in ACSAF and JPM's successor to ACSAF, the Commingled Stable Value Fund.

**ANSWER:**   Defendants admit that the members of the putative class are so numerous that

joinder of all members is impracticable.  Defendants deny that class certification is appropriate.

49.   *Commonality.* The claims of Plaintiffs and the proposed Class have a common origin and share a common basis. All Class members suffered from the same misconduct complained of herein, and they all suffered injury as a result of the breaches of duties and violations of ERISA that form the basis of this lawsuit. Proceeding as a class is particularly appropriate here because the ACSAF's assets were held in a collective trust while at ACI and were subsequently transferred together when JPM took the fund over in 2007. Furthermore, common questions of law and fact exist as to all members of the Class. The many questions of law and fact common to the Class include, but are not limited to:

a.   whether JPMRPS and any of the other JPM affiliates are fiduciaries under ERISA with respect to the conduct here alleged;

b.   whether JPMRPS and any of the other JPM affiliates breached fiduciary duties under ERISA by virtue of this conduct;

c.   whether any of the transactions by JPMRPS and other JPM defendants were prohibited transactions; and

d.   whether JPM's actions complained of herein have injured plan participants and their beneficiaries who were invested in ACSAF.

**ANSWER:**   Defendants deny the allegations of paragraph 49.

50.     *Typicality*. Plaintiffs' claims are typical of the claims of the members of the Class because they are substantively identical to the claims of the Class members. All Class members were investors in the same fund, the ACI Stable Asset Fund at the time its assets were acquired by JPM and all became investors in JPM's successor fund, its Commingled Stable Value Fund. If each member of the Class were to bring and prosecute these claims individually, each member of the Class would necessarily be required to prove the instant claims upon the same material and substantive facts and would seek the same type of relief.

**ANSWER:**     Defendants deny the allegations of paragraph 50.

51.     *Adequacy*. Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs have no interests that are, or would be, antagonistic to or in conflict with those of the Class members. Plaintiffs will vigorously protect the interests of the members of the Class.

**ANSWER:**     Defendants lack information sufficient to form a belief as to the truth of the

allegations of paragraph 51.

52.     Moreover, Plaintiffs have retained counsel who are competent and experienced in class actions and ERISA matters. Such counsel have been appointed as Lead Counsel and Interim Class Counsel in numerous class action lawsuits. The undersigned counsel will devote the time and other resources necessary to litigate this case as effectively as possible.

**ANSWER:**     Defendants lack information sufficient to form a belief as to the truth of the

allegations of paragraph 52.

53.     *Rule 23(b)(1)(A) and (B) requirements*.   Class certification in this ERISA action is warranted under Federal Rule of Civil Procedure 23(b)(1)(A) because prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for JPM. Certification also is warranted under Federal Rule of Civil Procedure 23(b)(1) (B) because prosecution of separate actions by individual Class members would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

**ANSWER:**     The allegations of paragraph 53 are legal conclusions to which no response is

necessary.  To the extent a response is required, Defendants deny the allegations of paragraph 53.

54.     *Rule 23(b)(2) requirements.*  Class certification under Federal Rule of Civil Procedure 23(b)(2) is warranted because JPM has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other equitable relief with respect to the Class as a whole.

**ANSWER:**   The allegations of paragraph 54 are legal conclusions to which no response is

necessary.  To the extent a response is required, Defendants deny the allegations of paragraph 54.

55.   ***Rule 23(b)(3) requirements***.  In the alternative, certification under Federal Rule
of Civil Procedure 23(b)(3) is appropriate because questions of law and fact common to
members of the Class predominate over any questions (if any) affecting only individual Class
members. Moreover, a class action is superior to other available methods for the fair and
efficient adjudication of this controversy.

**ANSWER:**   The allegations of paragraph 55 are legal conclusions to which no response is

necessary.  To the extent a response is required, Defendants deny the allegations of paragraph 55.

## COUNT I: BREACH OF FIDUCIARY DUTY, VIOLATION OF ERISA § 404(a)(1)(A) EXCLUSIVE BENEFIT

56.   Plaintiffs reallege and incorporate by reference each of the preceding paragraphs
as if set forth fully herein.

**ANSWER:**   Defendants incorporate by reference their responses to the preceding paragraphs.

57.   JPMRPS, JPMC and other JPM affiliates were fiduciaries, as discussed above, for
the plans offering the American Century Stable Asset Fund and plan participants, including
Plaintiffs and the proposed Class since at least 1999. ERISA section 404(a)(1)(A), 29 U.S.C. §
1104(a)(1)(A), requires fiduciaries to discharge their duties solely in the interest of participants
and beneficiaries, and for the exclusive purpose of providing benefits to the participants and
beneficiaries.

**ANSWER:**   Defendants deny the allegations of the first sentence of paragraph 57.  The

allegations of the second sentence of paragraph 57 purport to paraphrase selections from ERISA,

which speaks for itself, and thus are denied.

58.   Despite the prohibition of ERISA Section 404(a)(1), as well as Section 406(1)(A),
these JPM Defendants, while fiduciaries, caused a mass exit from ACSAF until it was no longer
a viable independent fund, and then caused American Century to transfer the assets, plans and
participants in its Stable Value Fund to JPM and its Commingled Stable Value Fund for no
consideration.

**ANSWER:**   Defendants deny the allegations of paragraph 58.

59.   JPMRPS' and JPMC's aforementioned actions were not in the best interest of the
American Century Stable Asset Fund's participants and beneficiaries. Rather, JPMRPS and
JPMC sought to cannibalize ACSAF with the purpose and result of rendering the ACSAF no

longer able to operate as an independent entity. As a result, Plaintiffs and the plaintiff Class found themselves involuntary participant in JPM's Commingled Stable Value Fund.

**ANSWER:**     Defendants deny the allegations of paragraph 59.

60.     JPMRPS and JPMC breached this duty of loyalty to plan sponsors and plan participants who were invested in the American Century Stable Asset Fund by actively inducing plan sponsors to leave the American Century fund in favor of JPM's competing Stable Asset Income Fund and then causing the American Century fund to be no longer viable and causing its participants and assets to be transferred to the Commingled Stable Value Fund.

**ANSWER:**     Defendants deny the allegations of paragraph 60.

61.     As a result of this wrongdoing, JPMRPS and JPMC are liable for all resulting loss and damage to the plans, to plaintiffs and the plaintiff class. JPMRPS and JPMC must also disgorge all monies they wrongfully made through use of the plans' assets.

**ANSWER:**     Defendants deny the allegations of paragraph 61.

## COUNT II: BREACH OF FIDUCIARY DUTY, VIOLATION OF ERISA § 404(a)(1)(B) DUTY OF LOYALTY

62.     Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if set forth fully herein.

**ANSWER:**     Defendants incorporate by reference their responses to the preceding paragraphs.

63.     JPMRPS, JPMC and other JPM affiliates were fiduciaries, as discussed above, for the plans and their participants, including Plaintiffs and the proposed Class, who had been invested in American Century's Stable Asset Fund and were so invested when it was acquired by JPM.

**ANSWER:**     Defendants deny the allegations of paragraph 63.

64.     A fiduciary has a duty of loyalty under ERISA sections 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B). The JPM defendants breached this duty of loyalty by the conduct alleged above. JPMRPS' and JPMC's actions directly and proximately caused substantial financial harm to Plaintiffs and the proposed Class and earned wrongful profits. As a result of this wrongdoing, JPMRPS and JPMC are liable for all resulting loss and damage to the plans, to Plaintiffs and the proposed plaintiff class. JPMRPS and JPMC must also disgorge all monies they wrongfully made through use of the plans' assets.

**ANSWER:**     Defendants deny the allegations of paragraph 64.

## COUNT III: KNOWING PARTICIPATION IN A BREACH OF FIDUCIARY DUTY

65.     Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if set forth fully herein.

**ANSWER:**     Defendants incorporate by reference their responses to the preceding paragraphs.

66.     To the extent they are not otherwise fiduciaries with regard to the conduct here alleged, the JPM Defendants other than JPMRPS and JPMC are liable under ERISA section 405(a), 29 U.S.C. § 1105(a), to Plaintiffs and the Class for all recoverable damage and relief as non-fiduciaries that knowingly participated with fiduciary JPMRPS and JPMC in their breaches of trust.

**ANSWER:**     Defendants deny the allegations of paragraph 66.

67.     The JPM Defendants', other than JPMRPS and JPMC, acts and omissions proximately caused substantial harm to Plaintiffs and the proposed class. As a result of their wrongdoing, each is liable for all resulting loss and damage. These defendants must also disgorge all monies made through wrongful use of the plans' assets.

**ANSWER:**     Defendants deny the allegations of paragraph 67.

## COUNT IV: VIOLATON OF ERISA §§ 406(a)(1)(A) AND (a)(1)(D) PROHIBITED TRANSACTIONS

68.     Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if set forth fully herein.

**ANSWER:**     Defendants incorporate by reference their responses to the preceding paragraphs.

69.     JPMRPS, JPMC and other JPM entities were fiduciaries, as discussed above, for ACSAF and for the 401(k) plans and plans' sponsors and plan participants to whom they provided investment advice and services and to successor Commingled Stable Value Fund and their plan sponsors and participants, including Plaintiffs and the proposed Class.

**ANSWER:**     Defendants deny the allegations of paragraph 69.

70.     The Defendants other than JPMRPS and JPMC are parties in interest pursuant to ERISA section 3, 29 U.S.C. § 1002, in that they were either fiduciaries of the plans or provided services to the plans.

**ANSWER:**     Defendants deny the allegations of paragraph 70.

71.     In violation of section 406(a)(1)(A), JPMRPS and JPMC caused the plans to sell property to one or more of these parties in interest in that they caused the plans to transfer to these parties the assets of the plans invested in the ACSAF and caused the plans to transfer to these parties in interest the management of such assets.

**ANSWER:**     Defendants deny the allegations of paragraph 71.

72.     In addition, in violation of section 406(a)(1)(D), JPMRPS and JPMC caused the plans to transfer to or use by or for the benefit of one or more of these parties in interest assets of the plans.

**ANSWER:**     Defendants deny the allegations of paragraph 72.

73.     JPMRPS' and JPMC's actions caused substantial financial harm to Plaintiffs and the proposed Class. As a result of this wrongdoing, JPMRPS and JPMC are liable for all resulting loss and damage. JPMRPS and JPMC must also disgorge all monies they wrongfully made through use of the plans' assets.

**ANSWER:**     Defendants deny the allegations of paragraph 73.

## COUNT V: VIOLATION OF ERISA §§ 406(b)(1), (b)(2) AND (b)(3) PROHIBITED TRANSACTIONS

74.     Plaintiffs reallege and incorporate by reference each of the preceding paragraphs as if set forth fully herein.

**ANSWER:**     Defendants incorporate by reference their responses to the preceding paragraphs.

75.     JPMRPS, JPMC and other JPM affiliates were fiduciaries, as discussed above, for ACSAF and successor Commingled Stable Value Fund and their plan sponsors and participants, including Plaintiffs and the proposed Class.

**ANSWER:**     Defendants deny the allegations of paragraph 75.

76.     ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits fiduciaries in their individual capacities from becoming involved in a transaction concerning the plan's assets when the transaction involves the fiduciaries' own interests or accounts.

**ANSWER:**     The allegations of paragraph 76 purport to characterize selections from ERISA,

which speaks for itself, and thus are denied.

77.     In violation of ERISA section 406(b)(1), 29 U.S.C § 1160(b) (1), JPMRPS and JPMC dealt with the assets of the plans in their own interest and for their own accounts by causing the plan assets to be transferred to another JPM Defendant, either a parent or co-subsidiary.

**ANSWER:**     Defendants deny the allegations of paragraph 77.

78.     In addition in violation of ERISA section 406(b)(2), they acted in transactions involving the plans on behalf of other JPM defendants whose interests were adverse to the interests of the plans and their participants in that they caused ACSAF no longer to be viable as an investment option for 401(k) plans so that its assets and participants would be transferred to JPM's successor Commingled Stable Value Fund.

**ANSWER:**     Defendants deny the allegations of paragraph 78.

79.     In addition, in violation of ERISA section 406(b)(3), 29 U.S.C. § 1106(b)(3), JPMRPS and JPMC received consideration for their own personal accounts in connection with influencing, managing and controlling fund selection for ACSAF plans they represented to the detriment of the remaining plan participants in the successor fund, the Commingled Stable Value Fund, and to increase their own revenues.

**ANSWER:**     Defendants deny the allegations of paragraph 79.

80.     The actions of JPMRPS and JPMC caused substantial financial harm to Plaintiffs and the proposed Class. As a result of this wrongdoing, JPMRPS and JPMC are liable for all resulting loss and damage to the plans, the plaintiffs and the plaintiff class. JPMRPS and JPMC must also disgorge all monies made through wrongful use of the plans' assets.

**ANSWER:**     Defendants deny the allegations of paragraph 79.

## PRAYER FOR RELIEF

Answering Plaintiffs' "Prayer for Relief" and the subparts thereto, Defendants deny that a class should be certified, any law was violated or that Plaintiffs are entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

A.     Plaintiffs' claims are barred in whole or in part by the applicable statute of

limitations, including ERISA Section 413, 29 U.S.C. § 1113, and/or the doctrines of laches.

B.     Any alleged breach and/or any purported losses suffered by Plaintiffs resulted

from their exercise of control over the assets in their accounts, and therefore Defendants cannot

be liable for any loss, or by reason of any breach, under ERISA 404(c), 29 U.S.C. § 1104(c).

C.     Plaintiffs have failed to mitigate their damages, if any.

D.     To the extent Plaintiffs can establish any transaction prohibited by ERISA Section

406, 29 U.S.C. § 1106, those claims are barred because those transactions are exempted by

ERISA Section 408, 29 U.S.C. § 1108, and/or class or individual exemptions promulgated by the

Department of Labor.

E.     Defendants reserve the right to assert, and hereby give notice that they intend to rely upon, any other defense that may become available or appear during the discovery proceedings or otherwise in this case and hereby reserve the right to amend the Answer to assert any such defense.

WHEREFORE, Defendants respectfully request that judgment be entered in their favor, that Plaintiffs' Second Amended Complaint be dismissed with prejudice, that Plaintiffs be denied any remedy or relief, and that Defendants be awarded any costs of this action, their attorneys' fees, and such other relief as the Court deems appropriate.

Dated: November 22, 2013                     Respectfully Submitted,

/s/ Azeez Hayne
Azeez Hayne (admitted pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel.: 215-963-5426
Fax: 215-963-6001
ahayne@morganlewis.com

Melissa D. Hill
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Tel: 212-309-6318
Fax: 212-309-6001
melissa.hill@morganlewis.com

Gregory C. Braden (admitted pro hac vice)
Christopher A. Weals (admitted pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel.: 202.739.5217
Fax: 202.739.3001
gbraden@morganlewis.com
cweals@morganlewis.com

Counsel for Defendants

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 22, 2013, I served the foregoing Answer to Plaintiffs'

Complaint via ECF Notification upon attorneys for Plaintiffs.

/s/ Azeez Hayne
Azeez Hayne (admitted pro hac vice)